Filed 5/31/24  In re E.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, unless specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E082762 |
| Plaintiff and Respondent, | (Super.Ct.No. J290856-58) |
| v. | OPINION |
| D.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Kristina M. Robb, Deputy County Counsel for Plaintiff and Respondent.

1

In this juvenile dependency appeal following the termination of parental rights, defendant and appellant D.G. (Father) contends that the trial court should have applied the beneficial parental relationship exception. We disagree and affirm.[1]

## I. BACKGROUND

In October 2021, plaintiff and respondent San Bernardino County Children and Family Services (the Department) filed section 300 petitions for three children: E.G. (born 2021), A.G. (born 2020), and J.G. (born 2017).[2] In part, the petitions alleged Father struck the children's half-sibling with a belt (see § 300, subd. (a)) and has an untreated substance abuse problem impairing his ability to provide care (see § 300, subd. (b)(1)). Deputy sheriffs had served a search warrant on the parents' residence and "located approximately 100 to 150 grams of methamphetamine in the garage near . . . a firearm that was loaded with the hammer cocked back, ready to be fired." The juvenile court found the described allegations to be true and ordered family reunification services.

Reunification services were provided through Father's 18-month review hearing. Father, who was arrested the same day the house was searched, was released in August 2022.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The Department filed petitions for four half-siblings as well, but they are not parties to this appeal. The seven children share a mother, but this appeal concerns only Father.

The Department's 18-month report noted Father tested positive for methamphetamine in October 2022 and methamphetamine and marijuana in December 2022. Father was placed in an outpatient substance abuse treatment program but was dismissed three months later for nonattendance. Visitation appeared to be regular if not more frequent than what court orders allowed. The children regularly visited the paternal grandmother for unsupervised overnight visits. But because Father lived at the paternal grandmother's house yet was allowed only two supervised visits a week with the children, the Department was concerned Father was violating his visitation order by remaining at the house when the children were there.[3] Father acknowledged a continuing need for intensive services for his substance abuse. The juvenile court terminated Father's reunification services at the contested 18-month review hearing.

The Department recommended the court terminate Father's parental rights and set adoption as the children's permanent plan. Father testified at the section 366.26 hearing. He said he visited the children every week and that they recognize him and call him dad. He said the children run up to him, calling "'Daddy, Daddy,' with open arms," and he felt a bond with them. The paternal grandmother also testified that the children love Father and have a bond with him.

---

[3] A later report stated that although paternal grandmother "is aware that Father is only authorized two hours per week, supervised," "it appears she is allowing the Father unlimited access to the children."

The children's foster mother also testified at the hearing. When she stated that Father would sometimes show up to his visits "intoxicated," the court admonished Father to stop making audible comments and warned that he would have to leave if he continued to do so. When the foster mother continued, stating that Father would appear "very tired, very sleepy," and perhaps "coming off a high," Father blurted expletives and was ejected from the courtroom.

The juvenile court terminated Father's parental rights and found the beneficial parental relationship exception did not apply. In doing so, the court found the foster mother "to be more credible" than Father and the paternal grandmother.

## II. DISCUSSION

### A. Applicable Law

At a section 366.26 hearing, the juvenile court selects and implements a permanent plan for a dependent child. (*In re Celine R.* (2003) 31 Cal.4th 45, 52-53 (*Celine R.*).) "In order of preference the choices are: (1) terminate parental rights and order that the child be placed for adoption (the choice the court made here); (2) identify adoption as the permanent placement goal and require efforts to locate an appropriate adoptive family; (3) appoint a legal guardian; or (4) order long-term foster care." (*Id.* at p. 53.) "Whenever the court finds 'that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.'" (*Ibid.*)

To avoid termination of parental rights, a parent must prove one or more statutory exceptions apply. (*In re Caden C.* (2021) 11 Cal.5th 614, 631 (*Caden C.*).) "One of the

4

exceptions, the beneficial parental relationship exception, applies when (1) 'the parent has regularly visited with the child'; (2) 'the child would benefit from continuing the relationship'; and (3) 'terminating the relationship would be detrimental to the child.'" (*In re M.V.* (2023) 87 Cal.App.5th 1155, 1183 (*M.V.*); see § 366.26, subd. (c)(1)(B)(i).) Like all the statutory exceptions, the beneficial parental relationship exception applies only "'in exceptional circumstances.'" (*Caden C.*, *supra*, at p. 631.)

"The first element—regular visitation and contact—is straightforward.  The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'"  (*Caden C.*, *supra*, 11 Cal.5th at p. 632.)

Second, "the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.)  "Again here, the focus is on the child.  And the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'"  (*Id.* at p. 632.)

"Concerning the third element—whether 'termination would be detrimental to the child due to' the relationship—the court must decide whether it would be harmful to the child to sever the relationship and choose adoption."  (*Caden C.*, *supra*, 11 Cal.5th at p. 633.)  "When the relationship with a parent is so important to the child that the security and stability of a new home wouldn't outweigh its loss, termination would be

'detrimental to the child *due to*' the child's beneficial relationship with a parent." (*Id.* at pp. 633-634.)

"We review the court's findings using a hybrid approach:  for the first two elements, which require factual findings (parental visitation and the child's emotional attachment), we apply the substantial evidence of review." (*M.V.*, *supra*, 87 Cal.App.5th at p. 1184.)  But where the juvenile court found the parent failed to carry his or her burden of proof, the question is more properly stated not in terms of substantial evidence, but rather "whether the [appellant parent's] evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 (*I.W.*), disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)  We apply the abuse of discretion standard to the juvenile court's "weighing of the relative harms and benefits of terminating parental rights" for the third element (*M.V.*, *supra*, 87 Cal.App.5th at p. 1184), but the substantial evidence standard applies for any factual determinations made here as well. (*Caden C.*, *supra*, 11 Cal.5th at p. 640.)   "[T]he ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his [or her] parent—is discretionary and properly reviewed for abuse of discretion." (*Ibid.*)  We will not reverse the juvenile court's order as an abuse of discretion unless the court made an arbitrary, capricious, or patently absurd determination. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

6

*B. Postjudgment Factual Contentions*

We begin with a factual claim Father makes for the first time on appeal. He claims that, two months after his parental rights were terminated, the foster mother was arrested for armed robbery. He argues the foster mother's arrest shows the trial court erred in finding the foster mother's testimony to be credible and should have instead found the beneficial parental relationship exception to apply.

In *In re Zeth S.* (2003) 31 Cal.4th 396 (*Zeth S.*), our Supreme Court held an appellate court "general[ly]" may not "consider postjudgment evidence that was never before the juvenile court, and rely on such evidence outside the record on appeal to reverse the judgment." (*Id.* at p. 400.) Like the case before us, *Zeth S.* involved an appeal following the termination of parental rights where the appellant parent claimed the beneficial parental relationship exception should have applied. (*Id.* at p. 403.) The postjudgment evidence there involved "an unsworn statement by minor's appellate counsel that maternal grandfather may have felt pressured into choosing adoption of his grandson over legal guardianship." (*Id.* at p. 407.)

Overturning a line of cases that had held postjudgment evidence should be "routinely and liberally considered" in juvenile dependency appeals, *Zeth S.* observed that such liberal consideration would be "at odds" with both the "procedural limitations which section 366.26 imposes on review of judgment terminating parental rights" as well as "generally applicable rules of appellate procedure." (*Zeth S.*, *supra*, 31 Cal.4th at pp.

412-413; see *id.* at pp. 408-409 [discussing cases].) It therefore found the appellate court erred by considering the postjudgment evidence.

In applying the general rule, however, *Zeth S.* acknowledged exceptions may be warranted in "rare and compelling" cases. (*Zeth S.*, *supra*, 31 Cal.4th at p. 400.) Specifically, it noted one case where it had previously made such an exception because "all of the parties were in agreement . . . the minor in that case was no longer adoptable . . . , thereby undermining the foundational basis of the trial court's order terminating [the] mother's custody and control over the minor." (*Id.* at p. 413, fn. 11, italics removed, citing *In re Elise K.* (1982) 33 Cal.3d 138; see *Celine R.*, *supra*, 31 Cal.4th at p. 53 ["Whenever the court finds 'that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption'" unless statutory exception applies].) However, beyond that specific scenario, "the nature and scope of any exception to the general rule [of nonadmissibility] must await a case in which the facts squarely present the issue." The Court noted that, on the facts before it, "the postjudgment evidence in question did not even directly relate to, much less undermine, the juvenile court's finding of the adoptability of the minor." (*Zeth S.*, *supra*, at p. 413, fn. 11.; see also *id.* at p. 406 ["It is particularly noteworthy that no party to this appeal has ever questioned or challenged the trial court's critical finding, made at the termination hearing below, that the minor Zeth was adoptable"].)

Contrary to what Father asserts, this is not a "rare and compelling" case justifying consideration of the foster mother's arrest. For one, Father's only support for his claim is

a newspaper article. Because it is offered to prove the foster mother was arrested, the article is hearsay, and Father fails to show any exception to the hearsay rule applies. (See *Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1266; see also *Zeth S.*, *supra*, 31 Cal.4th at p. 413, fn. 11 [postjudgment sworn statement offered was "not evidence"].)[4]

More importantly, whether the foster mother has been arrested does not conclusively determine whether the trial court erred in terminating Father's parental rights. As in *Zeth S.*, where the Court found it "particularly noteworthy" that no one questioned the trial court's adoptability finding (*Zeth S.*, *supra*, 31 Cal.4th at p. 406), here Father has not contended the finding that the children are likely to be adopted has been undermined in any way. Father argues the foster mother's arrest shows the juvenile court erred in crediting her testimony at the section 366.26 hearing over his own. It is improper to infer a person committed a crime simply because they were arrested for it. Moreover, as we now discuss, the beneficial parental relationship exception does not apply, even if we give the foster mother's testimony no evidentiary weight at all.

---

[4] Father suggests that we "could take judicial notice . . . of the foster mother's arrest record." Father in effect asks this court to obtain a document it does not have so we may take judicial notice of a factual representation within it. We decline Father's suggestion, at least in part because Father has not provided us with the arrest record, something he would have been required to do had he actually moved for judicial notice. (Cal. Rules of Court, rule 8.252(a)(3).) Even if we did take judicial notice, however, it would at most show that the foster mother has been accused of a crime, not that she in fact committed one.

9

*C. Beneficial Parental Relationship Exception*

In terminating Father's parental rights, the juvenile court found Father "failed to meet the burden of proof as to the second and third elements" of the beneficial parental relationship exception. As previously noted, the second element of the exception—that "the child has a substantial, positive, emotional attachment to the parent" such that "the child would benefit from continuing the relationship" (*Caden C.*, *supra*, 11 Cal.5th at p. 636)—will be found on appeal only if Father's evidence "was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*I.W.*, *supra*, 180 Cal.App.4th at p. 1528.)

Father has not shown his evidence was of such a character and weight as to compel a finding that the children are attached to him.[5] The young ages of the children when they were removed from Father's care (4 years, 1 year, and 7 months), as well as Father's incarceration for 10 months of the reunification period, weigh strongly in favor of the juvenile court's ruling. (See *Caden C.*, *supra*, 11 Cal.5th at p. 632 [parent-child relationship "may be shaped by a slew of factors, such as '[t]he age of the child [and] the portion of the child's life spent in the parent's custody"].) The only evidence Father has is testimony from two people, himself and his mother (the paternal grandmother), saying there was a bond. Even if uncontradicted, the juvenile court was not required to accept

---

[5] Because Father's failure to satisfy the second and third elements are dispositive, we do not address whether he satisfied the first element.

these statements at face value. "The trier of fact is not required to believe even uncontradicted testimony." (*Huy Fong Foods, Inc. v. Underwood Ranches, LP* (2021) 66 Cal.App.5th 1112, 1123.) "A witness may, of course, be disbelieved if there is any rational ground for doing so, and the interest of a party in the result of a case will in some circumstances justify the trier of fact in disregarding his testimony." (*Leonard v. Watsonville Community Hospital* (1956) 47 Cal.2d 509, 518.) That Father and the paternal grandmother's self-serving statements were the only evidence means the juvenile court could reasonably have found the second element of the exception to be lacking.

Father also fails to show the juvenile court abused its discretion in considering the third element, "whether 'termination would be detrimental to the child due to' the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) Indeed, despite devoting a two-page section of his opening brief to this element, Father does not argue the juvenile court abused its discretion on the third element at all. Rather, after reciting case law for one page, Father simply describes the events surrounding his ejection from the termination hearing before concluding that terminating the parental relationship would cause the children harm. His reply brief similarly contains no concrete discussion of the third element, which, it bears repeating, calls for weighing the parental relationship against "the security and stability of a new home." (*Caden C.*, *supra*, 11 Cal.5th at p. 633). Arguably, father has forfeited his challenge to the third element. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the

11

reasoning by which the appellant reached the conclusions he wants us to adopt'"].)  In any case, his conclusions do not follow from his premises, so his argument is unpersuasive.

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

McKINSTER
      Acting P. J.

CODRINGTON
        J.